**UNITED STEELWORKERS OF AMERICA LOCAL 1913 and/or Sam Godich,**

v.

**UNION RAILROAD COMPANY, Appellant.**

**No. 80–1956.**

United States Court of Appeals, Third Circuit.

Argued Jan. 12, 1981.

Decided May 6, 1981.

---

Henry J. Wallace, Jr. (argued), Lindsey D. Alton, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant; Michael T. Reilly, Pittsburgh, Pa., of counsel.

Robert Rade Stone, Pittsburgh, Pa. (argued), for appellee Sam Godich.

Francis M. Shea, Richard T. Conway, Ralph J. Moore, Jr., Shea & Gardner, Washington, D. C., David P. Lee, Gen. Counsel, National Railway Labor Conference, Washington, D. C., for the National Railway Labor Conference, amicus curiae.

Before SEITZ, Chief Judge, and ROSENN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Union Railroad Company (the Railroad) appeals from the district court's order, as amended, setting aside a decision of Public Law Board 1782 (the Board), directing removal of a member of the Board, and ordering a de novo investigative hearing into the grounds for terminating the employment of appellee Sam Godich.

### I.

In 1976, Sam Godich, a member of the United Steelworkers of America Local 1913 (the Steelworkers), was dismissed from employment with the Railroad following an investigative hearing into charges of insubordination, inciting and leading a work stoppage, and violating work rules. According to the Railroad and later findings of the Board, Godich was represented at the investigative hearing by a local Steelworkers official named Aaron. Pursuant to the Railway Labor Act, as amended, 45 U.S.C. §§ 151–188 (1976), the Steelworkers challenged Godich's dismissal before the Board. The Board was composed of a "carrier" member, a "union" member, and a "neutral" member. See id. § 153 Second. The union member, Harry J. Osborne of the Steelworkers, purported to represent Go-

dich at the Board hearing. The Board rejected Godich's challenge to his termination after finding that the Railroad's charges were supported by substantial evidence.

Godich retained private counsel and petitioned for review of the Board's order in federal district court. His contentions included a claim that he was denied his right to counsel during the Board hearing, in violation of section 153 First (j). Because the district court found the record inadequate to review this contention, it remanded to the Board. In this remand hearing, held without notice to Godich, the Board found that Godich had been represented by Osborne at the first Board hearing and had never requested other representation. Based on this finding, the district court concluded that Godich had waived his right to counsel at the first Board hearing. It dismissed his petition.

Godich appealed the dismissal to this court, which reversed the district court's finding of waiver because Godich had not received notice of the first remand Board hearing. The case was remanded to the district court so that it in turn could remand to the Board to conduct a second remand hearing, with proper notice to Godich, on the question of waiver of counsel. *United Steelworkers of America Local 1913 v. Union Railroad*, 597 F.2d 40, 42–43 (3d Cir. 1979) (*Godich I*).

At the second remand hearing, at which Godich was present and represented by counsel, Godich raised new challenges to his termination and the hearings related to it. He first claimed that he had been denied counsel at the original investigative hearing. The transcript of that hearing revealed that Godich selected Aaron to represent him, but Godich claimed that the transcript did not correctly reflect what he had said. After considering these contentions, the Board found that Godich had selected Aaron to represent him at the investigative hearing and had never before claimed that he had been denied representation of his own choosing at the investigative hearing.

Godich also claimed that Osborne, the Steelworkers member of the Board, had acted improperly in serving both as adviser to Godich at the first Board hearing and as a Board member, and that he and Osborne had personal conflicts. The Board concluded that Godich was not denied the right to representation at the first Board hearing because he never requested outside legal counsel or representation by anyone other than Osborne. The Board determined that Godich "simply did not avail himself of the option of requesting his own legal representation, if indeed he desired it at that time, during the handling of his case before this Board."

Godich filed a supplemental petition for review in the district court, claiming that the record did not support the Board's finding that he had not been denied the right to counsel. The district court first considered the contention that Godich had been denied counsel of his choosing at the investigative hearing in contravention of rule 26 of the contract between the Railroad and Local 1913.[1] Relying on testimony by Godich that he had explicitly requested counsel and on the absence of an explicit waiver of legal counsel, the court held that Godich had been denied his right to counsel. The court did not refer to the transcript of the investigative hearing, which indicated that Godich had selected Aaron as his representative.

The court next considered Godich's right to counsel at the first Board hearing. The court noted that the record contained no written authorization for the Steelworkers to represent Godich and no written or express oral waiver of the right to counsel. It credited Godich's testimony that Osborne had told him that he would be represented

---

1. Rule 26 provides:

No employee shall be disciplined, other than a reprimand, without a fair hearing by a designated officer of the Company. At a reasonable time prior to the hearing, he is entitled to be apprised of the precise charge against him. He shall have reasonable opportunity to secure the presence of necessary witnesses and shall have the right to be there represented by counsel of his choosing. . . .

by legal counsel, but that no counsel was provided, and that Godich's request for a postponement of the Board hearing to secure counsel was denied. The court acknowledged that the Board's findings to the contrary would ordinarily be binding. The court rejected these findings, however, for the following three reasons: (1) Godich had not expressly waived his right to counsel, (2) Osborne "could not play the dual role of being a member of a Public Law Board, and, at the same time, effectively represent the petitioner before the same Board" and (3) personal disputes between Osborne and Godich enabled Osborne to be neither an effective representative nor an effective Board member. The court concluded that Godich had been denied his right to counsel.

The court therefore set aside the Board's findings and ordered a "new and complete [Board] hearing on all charges," a hearing at which Godich "is to be accorded his right to legal counsel." The court further directed that Osborne not be a member of the Board for this third remand hearing. The court subsequently amended the order by also requiring the newly constituted Board to remand the case to the Railroad for a de novo investigative hearing. The Railroad's motion to the district court for reconsideration of its order was denied. The Railroad then appealed to this court.

## II.

Before we consider whether the district court was correct in setting aside the findings of the Board and ordering remands, we must decide whether we have jurisdiction to decide this appeal under 28 U.S.C. § 1291 (1976). In assessing appealability, we are mindful that this court has consistently refused to read expansively the final order doctrine, in order to further the important congressional goal of avoiding piecemeal litigation. *See Bachowski v. Usery,* 545 F.2d 363, 371–73 (3d Cir. 1976). Consistent with this policy, remands to administrative agencies are not ordinarily appealable under section 1291. *See, e. g., Marshall v. Celebrezze,* 351 F.2d 467, 468 (3d Cir. 1965) (remand of social security disabil-

ity-benefits case to HEW Secretary to take additional evidence). Specifically, orders directing remands to Railway Labor boards to consider additional evidence have been considered nonfinal. *See United Transportation Union v. Illinois Central Railroad,* 433 F.2d 566, 568 (7th Cir. 1970), *cert. denied,* 402 U.S. 915, 91 S.Ct. 1374, 28 L.Ed.2d 661 (1971); *Transportation-Communication Division—Brotherhood of Railway, Airline and Steamship Clerks v. St. Louis-San Francisco Railway,* 419 F.2d 933 (8th Cir. 1969), *cert. denied,* 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45 (1970).

Nevertheless, when a district court's order can be characterized as a final disposition of the present litigation or when dismissal of the appeal will have the practical effect of denying later review, we have recognized that exercise of appellate jurisdiction under section 1291 may be appropriate. *See Bachowski,* 545 F.2d at 372–73 & n.62. The Railroad contends that it is proper to exercise appellate jurisdiction in this case for those two reasons: the district court's order had the practical effect of dismissing the present litigation and review of the legal questions raised by this appeal will be foreclosed if not permitted now.

To assess these contentions, we must consider the nature of the district court's order. As we have noted, the Board's sole function in the second remand hearing, held pursuant to *Godich I,* was to determine whether Godich had waived his right to counsel. *See Godich I,* 597 F.2d at 43 (ordering Board to decide question after Godich given proper notice of hearing). After conducting a hearing as directed, the Board found that Godich had waived his right to counsel at the investigative and Board hearings. Godich then petitioned in the district court for review of the Board's award. The district court "reversed" the Board's determination that Godich was not denied his right to counsel and directed that a reconstituted board remand the question of Godich's termination to the Railroad for a de novo investigative hearing.

Thus, in directing a remand, the district court was not seeking to have the Board

consider new or additional evidence concerning the findings it "reversed." *See United Transportation Union v. Illinois Central Railroad,* 433 F.2d 566; *Transportation-Communication Division,* 419 F.2d 933. Nor did the court direct the Board to follow certain guidelines or standards, which could then be challenged on a later appeal. *See Bachowski,* 545 F.2d at 372–73. Furthermore, unlike *Bachowski,* the district court left no part of Godich's petition undecided. *See id.* at 372. To the contrary, the court's order represented a final decision that Godich was denied his right to counsel, an issue that is no longer subject to Board or district court determination. Additionally, by ordering a reconstituted board to direct de novo hearings, the district court's order permanently disposed of all findings and orders of the Board. Therefore, the district court's order, as amended, represented an effective end to the past five years of hearings and litigation concerning the termination of Godich's employment.

In addition, if appeal of this order must await completion of new hearings at the investigative and board levels, later review may well be unavailable. Review of board hearings is governed by the Railway Labor Act. Section 153 First of the Act provides for the establishment of the National Railroad Adjustment Board, which has jurisdiction over certain labor disputes. Under section 153 Second, special boards of adjustment, or public law boards, may adjust and decide disputes otherwise referable to Adjustment Board divisions. These special boards are established by agreement of carriers and labor organizations and they decide categories of cases defined in the agreements establishing them. Public Law Board 1782, to which Godich's grievance was submitted pursuant to the Act, was such a board.

Section 153 Second, although different from section 153 First in many respects, provides that public law board decisions shall be enforceable "by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board." § 153 Second; *see Cole v. Erie Lackawanna Railway,* 541 F.2d 528, 532 (6th Cir. 1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977); *United Transportation Union v. Indiana Harbor Belt Railroad,* 540 F.2d 861, 863 (7th Cir. 1976). Adjustment Board awards may be reviewed as follows:

> [T]he findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

§ 153 First (q). The scope of this review has been described as " 'among the narrowest known to the law.' " *International Association of Machinists & Aerospace Workers, District Lodge # 19 v. Southern Pacific Transportation Co.,* 626 F.2d 715, 717 (9th Cir. 1980) (quoting *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir. 1970)); *see Union Pacific Railroad v. Sheehan,* 439 U.S. 89, 93–94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam).

■ Because of this very narrow standard of review of board findings, the findings and order of the new Board will be conclusive unless the new Board fails to comply with the Act, the new order is outside the Board's jurisdiction, or a Board member acts fraudulently or corruptly. The issue the Railroad raises now, however, will no longer be a subject for Board or district court consideration. Unless review is permitted now, the Railroad may be denied a full opportunity to challenge the district court's order later.

Because the district court decided the right-to-counsel issue, and directed reconstitution of the Board and a de novo investigative hearing, the district court's order effectively ended all litigation concerning the conduct of the prior investigative and

Board hearings. Furthermore, denial of appeal now may deny the Railroad an opportunity for later review. We hold, therefore, that the district court's order, as amended, is an appealable final order. We emphasize that we find appellate jurisdiction because the unusual circumstances of this case require the conclusion that the district court's order is final.

### III.

The district court concluded that Godich was denied his right to counsel, provided by rule 26 of the contract between the Railroad and the local union, at the investigative hearing. The court held that an "employee should be permitted to waive the right of legal representation only if done so expressly and without question on the record or by way of a written statement." Because the court found no express waiver, it rejected the Board's finding that Godich was not denied representation of his choosing at the investigative hearing and made its own finding that Godich was denied such representation.

▨ The district court, however, was not free to go beyond the contract to require express waiver of counsel in an investigative hearing. The procedures followed in an investigative hearing, including the representation to which an employee is entitled, are governed by the applicable collective bargaining agreement. *See, e. g., Edwards v. St. Louis-San Francisco Railroad*, 361 F.2d 946, 953–54 & n.19 (7th Cir. 1966); 45 U.S.C. § 153 First (i) (providing for private adjustment between parties to be "handled in usual manner"). An employee complaining of a wrongful discharge after an investigative hearing has been conducted must submit the claim to an adjustment board pursuant to the Railway Labor Act. *See Andrews v. Louisville & Nashville Railroad*, 406 U.S. 320, 324, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972). Adjustment pursuant to the Act is an exclusive remedy, and judicial review of a board's award is limited to the review provided by the Act. *See id.* at 325, 92 S.Ct. at 1565.

That review, as we have discussed above, is limited to three narrow categories. In *Union Pacific Railroad v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978) (per curiam), for example, the Supreme Court rejected an appellate court's decision to set aside an Adjustment Board award based on a determination that Sheehan was deprived of due process before the Board. The Court explained:

> The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations. Normally finality will work to the benefit of the worker: He will receive a final administrative answer to his dispute; and if he wins, he will be spared the expense and effort of time-consuming appeals which he may be less able to bear than the railroad.... Here, the principle of finality happens to cut the other way. But evenhanded application of this process is surely what the Act requires.

*Id.* at 94, 99 S.Ct. at 402 (citation omitted).

Godich suggests that *Sheehan* applies only to denials of procedural due process. He characterizes his contention that he was denied the right to counsel as an allegation that he was deprived of substantive due process. Therefore, according to Godich, judicial review of his claim is not limited by the narrow standards of the statute. However, even if Godich's characterization of his claim is correct, we note that there is no language in *Sheehan* to justify such a procedural/substantive distinction. To the contrary, the Court in *Sheehan* was quite specific in rejecting nonstatutory grounds for review. As the Court stated, "[t]he dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review provided for in the Railway Labor Act.... We have time and again emphasized that *this statutory language means just what it says.*" *Sheehan*, 439 U.S. at 93, 99 S.Ct. at 402 (emphasis added).

▨ Thus, the district court was bound by the Board's findings that Godich was not denied the right to separate representation

at the investigative hearing unless (1) the Board failed to act in compliance with the Railway Labor Act, (2) the order of the Board was outside the scope of its jurisdiction, or (3) one of the Board's members acted fraudulently or corruptly. Express waiver of the contractual right to counsel was not required by the contract. Its absence does not fall within one of the three categories. Therefore, the district court erred in setting aside the finding of the Board that Godich selected Aaron as his representative at the investigative hearing.

## IV.

The reasons given by the district court for setting aside the findings regarding representation at the Board hearing were (1) the absence of an express waiver of the right to counsel, (2) Osborne's dual role and the resulting conflict of interest in representing Godich, and (3) the existence of personal conflicts between Osborne and Godich so that Osborne was an ineffective representative and Board member. We must determine whether any of these reasons fall within the statutory categories permitting the district court to set aside the findings of the Board.

 The right to counsel at Adjustment Board hearings is governed by section 153 First (j), which provides that "[p]arties may be heard either in person, by counsel, or by other representatives, as they may respectively elect. . . ." 45 U.S.C. § 153 First (j). This is the right to representation Godich claims to have been denied in the first Board hearing.[2] Under subdivision (j), there is no statutory requirement that the right to elect counsel be expressly waived and we believe that such a requirement would be inconsistent with the statutory scheme, in which representation by counsel is only one of three kinds of representation an employee may elect.

Furthermore, we believe that Supreme Court precedent directs a more flexible approach to the selection of representation. The Steelworkers claim to have provided representation for Godich, and the Supreme Court has made clear that no one rule can be applied to determine whether a union has been given authority to represent an employee before the Adjustment Board. *See Elgin, Joliet & Eastern Railway v. Burley*, 327 U.S. 661, 663, 66 S.Ct. 721, 722, 90 L.Ed. 928 (1946) (*Burley II*). For example, a union may be granted authority to represent an employee by custom and usage or by the terms of a union's bylaws, constitution, or regulations. *Id.* at 663 & n.2, 66 S.Ct. at 722 & n.2.[3] We do not believe that the district court's requirement of express waiver of the right to counsel is consistent with this flexible approach to determining whether representational authority has been granted.

 Additionally, *Burley II* states that the party challenging representation must carry the burden of showing that the Board action was incorrect. *See id.* at 664, 66 S.Ct. at 722. The district court's determination that an express waiver of the right to counsel must be proved in all cases has the contrary effect of placing the burden on the Board to prove that its action in allowing union representation was correct. For all these reasons, we conclude that failure to secure an express waiver of the right to counsel is not a violation of the Railway Labor Act. Therefore, the absence of waiver is not a proper ground for setting aside the Board's findings.

**2.** Because of our disposition of this appeal, we need not decide an issue presented by the Railroad: whether subdivision (j)'s representation provision applies to public law board hearings to the same extent as does subdivision (j)'s notice provision, which we applied to the Board hearing in *Godich I*, 597 F.2d 40 (3d Cir. 1979).

**3.** The Steelworkers' constitution grants such authority:

The International Union and the Local Union to which the member belongs shall act exclusively as the member's agent to represent the member in the presentation, maintenance, adjustment, and settlement of all grievances and other matters relating to terms and conditions of employment or arising out of the employer-employee relationship.

Constitution of United Steelworkers of America, AFL–CIO–CLC, art. XVII, § 3 (1974).

We consider next the district court's finding that a conflict resulted from Osborne's dual role as Godich's representative and member of the Board. The district court determined that Osborne could not be a Board member and effectively represent Godich at the same time. The Railroad contends, however, that the statutory scheme contemplates that the union and carrier members of a board will be partisans. It contends, therefore, that it is not a ground for setting aside a board's findings that one person both represents an employee and serves as the union member of the board.

Section 153 Second permits establishment of public law boards to which employee representatives may bring grievances. A public law board "shall consist of one person designated by the carrier and one person designated by the representative of the employees." § 153 Second. The union member, like the carrier member, is "compensated by the party he is to represent," and is "associated in interest" with that party. *Id.* As the United States Court of Appeals for the Seventh Circuit has said of adjustment boards:

> Members of such boards are not in legal contemplation, or in fact, supposed to be neutral arbitrators. They are carrier and labor organization representatives. 45 U.S.C.A. § 153. And, provision is made for designation of a "neutral person . . ." in event of deadlock. The board is bipartisan rather than impartial and disinterested.

*Arnold v. United Air Lines, Inc.*, 296 F.2d 191, 195 (7th Cir. 1961). While an individual employee may choose independent representation, *see* notes 2 & 3 *supra*, it is not a per se violation of the Railway Labor Act for the union member of a board to serve as the employee's representative. Thus, Osborne's dual role as representative and Board member is not a proper ground for setting aside the findings of the Board.

Finally, the district court noted that personal conflicts between Godich and Osborne prevented Osborne from being an effective representative and Board member. We believe it was error for the district court to set aside the Board's finding because of these alleged conflicts. A district court may not set aside the findings of a board on the basis of the court's determination that the employee's representative was ineffective. A claim that an employee received ineffective representation, because it constitutes a challenge to the actions of the representative, not the actions of the board, does not fall within any of the three categories permitting a district court to set aside a board's finding.

A claim that personal conflicts affected the work of a board member, however, might justify setting aside a board's findings if the conflicts caused the board member to act fraudulently or corruptly. We do not understand Godich to be contending fraud or corruption on Osborne's part. Even if this were his contention, we believe that Godich waived any objections he may have had to Osborne's presence on the Board. Although Godich testified at the second remand hearing that he had learned that Osborne had made derogatory remarks about him and his attorney, and that Osborne and Godich were union rivals, these comments were apparently made only to show that Osborne was an ineffective representative, not to challenge the composition of the Board. Godich did not directly challenge Osborne's membership on the Board until he filed his supplemental petition for review after the second remand hearing, although the concerns supporting his challenge were known to him before the second remand hearing was held. When the reasons supporting an objection are known beforehand, a party may not wait to make an objection to the qualifications of a Board member until after an unfavorable award has been made. *See, e. g., Amalgamated Meat Cutters, Local 195 v. Cross Brothers Meat Packers, Inc.* 518 F.2d 1113, 1121 & n.19 (3d Cir. 1975). Therefore, Osborne must be deemed to have waived whatever objections he had to the constitu-

tion of the Board. *See Bower v. Eastern Airlines, Inc.*, 214 F.2d 623, 627 (3d Cir.), *cert. denied*, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685 (1954).

■ The statutory scheme demands evenhanded application of the doctrine that the findings of public law boards are nearly always final. *See Union Railroad v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam). Even though circumstances may seem compelling in an individual case, we are convinced that we must adhere strictly to the statutory command that Board findings be set aside in only three narrow sets of circumstances. Because those exceptions were not present in this case, the findings of the Board should not have been set aside by the district court.

## V.

In conclusion, we hold that the district court's order, as amended, setting aside the findings of the Board, ordering that the Board be reconstituted, and directing a remand for a de novo investigative hearing, is appealable. We also hold that the Board's findings regarding Godich's right to representation at both the investigative hearing and the hearing before Public Law Board 1782 are entitled to final effect and were conclusive in the district court. The order of the district court will be reversed and the case remanded with directions to dismiss the petition to review the Award by Public Law Board 1782.